UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL EDWARD DURAN,<br><br>    Plaintiff,<br><br>    v.<br><br>LONGORIA,<br><br>    Defendant. | Case No. 1:20-cv-00289-HBK (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Doc. No. 73) |

Pending before the Court is Defendant Longoria's motion for summary judgment, filed on December 23, 2024. (Doc. No. 73, "MSJ"). Plaintiff Paul Edward Duran, a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action, timely filed an opposition, (Doc. No. 76), and Defendant filed a Reply (Doc. No. 78). The Court finds no dispute as to any material fact that Defendant's confiscation of Plaintiff's religious items did not substantially burden Plaintiff's religious practices in violation of the Free Exercise Clause. Therefore, the Court grants Defendant's motion.

///

///

---

[1] Both parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). (Doc. No. 55).

# I. BACKGROUND

## A. Procedural History

Plaintiff proceeds on his Third Amended Complaint filed pursuant to 42 U.S.C. § 1983. (Doc. No. 25, "TAC"). On March 21, 2023, the Court submitted its findings and recommendations to the District Court, determining that the TAC stated a cognizable First Amendment free exercise of religion claim against Defendant Longoria but no other claim against any other defendants. (Doc. No. 27). On April 17, 2023, the District Court adopted in full this Court's findings and recommendations. (Doc. No. 30). Defendant filed an Answer on August 14, 2023. (Doc. No. 43). The Court entered a Discovery and Scheduling Order on December 7, 2023. (Doc. No. 51). On January 8, 2024, the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. No. 55). After the parties engaged in and completed discovery, Defendant filed the instant MSJ. (Doc. No. 73).

In support of his MSJ, Defendant submits: (1) a memorandum of points and authorities (Doc. No. 73-1); (2) the declaration of Ari Sheps, Deputy Attorney General (Doc No. 73-2) attaching excerpts from Plaintiff's deposition (Doc No. 73-2, Ex. A); (3) the declaration of M. Robicheaux, CDCR's Community Resource Manager of the Religious Program Unit at California State Prison-Corcoran (Doc. No. 73-3) attaching CDCR polices (Doc. No. 73-3, Ex. B); and (4) a statement of undisputed material facts (Doc. No. 73-4). In opposition, Plaintiff submits his Objections to Defendant's Motion for Summary Judgment (Doc. No. 76).

## B. Allegations in Plaintiff's TAC

Plaintiff is a practicing member of the Odinism religion. (Doc. No. 25 at 6). On March 22, 2019, while outside his housing unit in "A Yard" at the California Department of Corrections and Rehabilitation's ("CDCR") Corcoran facility, Defendant confiscated Plaintiff's Thor's Hammer and runes . (*Id*.). Before Defendant took these items, Plaintiff explained that he needed them to perform certain religious rituals, but Defendant told him he did not care about Plaintiff's "pagan religion" and that Plaintiff needed "to go to church and give [himself] to Jesus Christ." (*Id*. at 6-7). Plaintiff made these religious items "from rocks in the prison yard." (*Id*. at 11). At his previous institution, he had obtained a Handicraft Permit (which he refers to as a "hobby craft

2

permit") that allows him to make his own Thor's Hammers and runes.[2] (*Id.*). Plaintiff states these blessed items are integral to performing religious ceremonies as a self-practicing Odinist. (*Id*. at 5-7). Specifically, without these items, Plaintiff has a "total inability" to practice his faith and perform "the hallowing of the hammer" and "Bolotar" sin rituals alone in his cell. (*Id*. at 6-7).

Because he had a "sirious [sic] conflict" with another Odinist inmate that "was about to turn violent," Plaintiff practiced his religion by himself in his cell instead of attending Odinist services. (*Id*. at 10). As relief, Plaintiff seeks compensatory damages for the value of his religious items, $1,000,000 for pain and suffering, and costs associated with brining this action. (*Id*. at 15).

## II. APPLICABLE LAW

### A. Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] Handicraft Permits do not authorize prisoners to retain religious items, nor does the record indicate that such permits supersede or circumvent CDCR policy. (Doc No. 73-2 at 16-17, Ex. A at 63:6-64:22; Doc No. 73-3 at 2, ¶ 5). Therefore, to the extent Plaintiff argues that his permit allowed him to retain these items, this argument is immaterial to the Court's free exercise analysis.

3

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion. *Anderson*, 477 U.S. at 252. However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*,

4

611 F.3d 1144, 1150 (9th Cir. 2010)).  While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims.  *Soto*, 882 F.3d at 872.  Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge, not merely belief, and it must set forth specific facts admissible in evidence.  *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); Fed. R. Civ. P. 56(e).

A complaint's conclusory allegations unsupported by specific facts, however, will not be sufficient to avoid summary judgment.  *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  Where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).  A court may grant an unopposed or inadequately opposed motion for summary judgment if the supporting papers are themselves sufficient to warrant granting the motion and do not on their face reveal a genuine issue of material fact.  *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection.  Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of issuing this order.

**B.  First Amendment Free Exercise Clause**

The First Amendment to the Constitution protects the free exercise of religion.  Convicted inmates "retain protections afforded by the First Amendment" including the right to "the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  Prison officials are prohibited from substantially burdening the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith unless the impingement "'is reasonably related to legitimate penological interests.'"  *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). Alternatively, "[a] substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation omitted). A substantial burden on religious exercise must involve a "central tenet" or a mandatory requirement of the person's religion. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997); *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir. 1995).

Correctional officials may bar certain religious objects and artifacts or limit their use if they present security problems. *O'Lone*, 482 U.S. at 348. "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *see also Friend v. Kolodzieczak*, 923 F.2d 126, 127 (9th Cir. 1991) (upholding ban on rosary beads and scapulars). And while prison officials must treat all religions in a comparable manner, total parity is not required. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *Shakur*, 514 F. 3d at 891 (applying *Turner* reasonableness standard and not "rational basis" test).

### III. ANALYSIS

**A. Undisputed Material Facts**

Defendant provides a statement of undisputed material facts. (Doc. No. 73-4). Each listed fact cites to sworn declarations, Plaintiff's deposition testimony, and the Third Amended Complaint. Having reviewed the record, the Court finds the following facts to be material and undisputed, unless otherwise noted.

- On March 22, 2019, Plaintiff was outside his housing unit in "A Yard" at CDCR's Corcoran facility when Defendant searched Plaintiff. (Doc. No. 73-2 at 18-19, Ex. A at 66:5-23, 68:1-10).

- As a result of the search, Defendant found Plaintiff in possession of 24 runes and

6

four Thor's Hammers, which Defendant confiscated.  (Doc. No. 25 at 6; Doc No. 73-2 at 18, 22-23, Ex. A at 66:5-8, 73:23-74:7).

- At the time of confiscation, Plaintiff told Defendant that the confiscated items were "blessed" by religious elders.  (Doc. No. 25 at 6-7).
- Plaintiff had a Handicraft Permit (which he refers to as a "hobby craft permit").  (Doc. No. 25 at 10-11; Doc No. 73-3 at 2, ¶ 4).
- Handicraft Permits do not authorize prisoners to retain religious items but "allow inmates to create art projects and similar artistic products."  (Doc No. 73-2 at 16-17, Ex. A at 63:6-64:22; Doc No. 73-3 at 2, ¶ 5).
- CDCR's Religious Personal Property Matrix ("RPPM") identifies allowable religious items that inmates are permitted to purchase and possess, as well as the specific requirements to which the religious items must adhere.  (Doc. No. 73-3 at 2, ¶ 3).
- Under Odinist practices, one may use their own arm as Thor's Hammer for certain religious ceremonies.  (Doc No. 73-2 at 15, Ex. A at 59:17-23).
- Accumulations of small rocks can be used as a weapon by prisoners.  (Doc No. 73-2 at 10-11, Ex. A at 50:6-51:8).
- Plaintiff has sold items made from rocks to other inmates.  (Doc No. 73-2 at 20-21, Ex. A at 70:25-71:13).
- Religious runes, Thor's Hammers and stone sets are permitted under CDCR's RPPM with limitations.  Plaintiff's confiscated items would fall under the category of "Beading Materials," "Religious Medallion and Chain" or "Stones" in the RPPM.  (Doc No. 73-3 at 8, 10, Ex. B at 3, 5).
- Under the RPPM, Religious Medallion and Chains, which explicitly include "Thor's Hammer," are "obtainable as a set only."  (Doc. No. 73-3 at 10, Ex. B at 5).
- Under the RPPM, Beading Materials must not exceed 1/4 inch in diameter and 1/2 inch in length.  (Doc No. 73-3 at 8, Ex. B at 3).

7

- Under the RPPM, a set of five (5) stones may not exceed 1 inch in diameter, and set of ten (10) stones may not to exceed 1/2 inch in diameter. (Doc No. 73-3 at 10, Ex. B at 5).
- Plaintiff did not obtain his Thor's Hammers or his runes as a set, rather he created these items out of rocks. (Doc. No. 25 at 11; Doc No. 73-2 at 6, 22-23, Ex. A at 39:3-4, 73:23-74:7).
- Some of the religious items confiscated from Plaintiff were approximately one inch by two inches in size. (Doc No. 73-2 at 9-10, 21, Ex. A at 49:23-50:5, 71:10-16).
- Prisoners can purchase Odinist runes from approved vendors. (Doc No. 73-3 at 4-5, Ex. B).
- While Plaintiff has purchased other religious items from the religious catalog, he does not purchase his runes or Thor's Hammers from the approved vendors. (Doc No. 73-2 at 5-6, Ex. A at 38:1-39:13).
- CDCR Corcoran maintained religious services for Odinist practitioners. (Doc No. 73-2 at 7, Ex. A at 40:5-25).
- Following Plaintiff's transfer from CDCR's Corcoran facility, Plaintiff did not attend Odinist services. (Doc No. 73-2 at 8, Ex. A at 41:10-23).

**B. CDCR's Religious Property Policy**

As noted, CDCR has adopted specific regulations to govern the possession of religious articles by inmates. CDCR's RPPM permits prisoners to possess one medallion but restricts the size of the medallion. (Doc. No. 73-3 at 10, Ex. B). The RPPM also permits prisoners to possess one set of stones but limits the total number stones in the set based on their size. (*Id*.). In relevant part, the RPPM states:

> RELIGIOUS MEDALLION AND CHAIN - Medallion (including, but not limited to, Cross, Crucifix, Medicine Wheel, pentagram, rosette, Star of David, Thor's hammer) not to exceed 1.5" or 38.1 mm. in diameter. Chain, leather, sinew (sinew may be beaded) not to exceed 24" or 609.6 mm. in length, not to exceed 3/16" or 4.8 mm. in diameter, individual links not to exceed 3/16" or 4.8 mm. in diameter. Obtainable as a set only. . .

> STONES - Set of 5, not to exceed 1" or 25A mm. in diameter, or set of 10, not to exceed 1/2" or 12.7 mm. in diameter. Stones may include carved statue images (i.e. Buddha; Jesus, Mary). No sharp edges or made of obsidian.

### C. Substantial Burden

The Free Exercise Clause prohibits prison officials from placing a substantial burden on a prisoner's religious practices by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85 (citing *Turner*, 482 U.S. at 89). Defendant does not dispute the sincerity of Plaintiff's religious beliefs. Rather, Defendant argues that the undisputed material facts demonstrate that the confiscation of Plaintiff's religious items did not constitute a substantial burden on Plaintiff's religious practices. The Court agrees.

Generally, a substantial burden exists when a prisoner is denied "all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir.1993) (citing *O'Lone*, 482 U.S. at 351-52); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1209 (9th Cir.2008) (denial of all outlets to religious worship opportunities can violate the First Amendment). A First Amendment Free Exercise Clause violation requires that a prison official's interference with a prisoner's religious practices "must be more than an inconvenience" and "the burden on the religious practice must be substantial." *Freeman v. Arpaio*, 125 F.3d at 737 *abrogated on other grounds in Shakur*, 514 F.3d at 884-85. Moreover, "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, are insufficient to state a claim under the free exercise clause." *Brown v. Adams*, No. 2:13-CV-192-RMP, 2015 WL 867657, at *6 (E.D. Wash. Feb. 27, 2015) (cleaned up) (quoting *Lovelace v. Lee,* 472 F.3d 174, 194 (4th Cir. 2006)), *aff'd*, 667 F. App'x 265 (9th Cir. 2016).

As a practicing Odinist, Plaintiff asserts that the confiscation of his religious items deprived him of the ability to practice his religion. (Doc. No. 25 at 6-8). Specifically, Plaintiff contends that he was unable to perform certain rituals without the confiscated items, such as "the hallowing of the hammer" and "Bolotar" ritual. (*Id*. at 6-7). However, aside from these statements asserted in the operative complaint, Plaintiff fails to provide any explanation as to how

9

the confiscation of these specific items—the four Thor's Hammers and 24 runes—completely inhibited his ability to practice his religion, perform or participate in any Odinist religious ceremony. Plaintiff's own testimony indicates that he had various alternatives to practice his faith and access to similar types of religious items that were confiscated. These available alternatives include: (1) attending Odinist services; (2) purchasing religious items from an approved vendor; (3) possessing religious stones and medallions within the applicable limits of CDCR's RPPM policy; (4) creating religious items using materials other than stone; and (5) using his own arm as a Thor's Hammer.

Although Plaintiff claimed he could not attend Odinist services due to a conflict with another Odinist inmate in his FAC and Opposition, (*Id*. at 10; Doc No. 76 at 2), Plaintiff's deposition testimony indicates that he prefers to be a solo, self-practicing Odinist and that attending these services is "like child's play" because other Odinists "bicker about [their] religious beliefs." (Doc. No. 73-2 at 8, Ex. A at 41:10-23). Plaintiff further stated that this type of service setting "hinder[ed] [his] ability for [ ] ascension in [his] Odinist faith." (*Id*.). His preference not to attend these services is further supported by the fact that he has not attended Odinist services at other CDCR facilities following his transfer from the Corcoran facility. (*Id*.). Considering his deposition testimony, Plaintiff's service attendance and solo-practicing approach demonstrate that he chose not to attend services due to personal preference rather than fear of conflict with other Odinist prisoners at Corcoran. Nonetheless, under these circumstances, the confiscation of his religious items, without more, would not constitute a substantial burden on Plaintiff's religious practices, particularly when Plaintiff had access to Odinist services, despite the potential for unwanted interactions with other prisoners at these services. *See, e.g., Sessing v. Beard*, No. 1:13-CV-01684-LJO, 2015 WL 3953501, at *6 (E.D. Cal. June 29, 2015) (finding that "sharing space with other religious groups does not impose a substantial burden on [plaintiffs'] practice of Odinism" despite plaintiffs' concerns "that sharing [the] space will create[ ] unwanted interactions between Odinist and Native American deities and the potential for 'confusion and loss of focus' for Odinist worshippers.").

Plaintiff also asserts he created various religious items because he was unable to afford the

religious items provided through the prison catalog. (Doc. No. 73-2 at 5, Ex. A at 38:10-22). However, Plaintiff admitted he has purchased religious items from the prison catalog but prefers to make his own items because the items he creates are "more significant and meaningful" than the items available in the catalog. (*Id*. at 5-6, Ex. A at 38:23-39:13). Indeed, Plaintiff acknowledges that the stones he collected were used to by him to create and sell various items to other inmates, including arrowheads, Thor's Hammers, and teardrops. (*Id*. at 20-21, Ex. A at 70:25-71:9). Nonetheless, Plaintiff's financial status at the time of the incident is immaterial because his inability to purchase these religious items through the prison catalog does not rise to the level of a substantial burden on his religious practices. *See Daniel v. Williams*, No. CV 06-722-AS, 2007 WL 3130169, at *5 (D. Or. Oct. 23, 2007) (finding "[p]laintiff's right to practice his religion was not substantially burdened by his inability to purchase religious material . . .").

Further, CDCR's RPPM policy does not impose a blanket ban on the possession of stone runes or Thor's Hammers. The RPPM only restricts the number and size of religious medallions and stones. And Plaintiff acknowledged that CDCR allows prisoners to handcraft "runes[,] crosses[,] or [ ] Muslim pendants . . . from cardboard." (Doc. No. 73-2 at 12-13, Ex. A at 54:18-55:8). Thus, these handcrafted cardboard Thor's Hammers can be used "to hallow the ground in order to open up the ceremonies." (*Id*. at 15, Ex. A at 59:17-23). Finally, Plaintiff also testified that the Odinist religion allows practitioners to use their own arm as a Thor's Hammer for religious ceremonies. (*Id*.).

Under these circumstances, the confiscation of Plaintiff's religious items constituted no "more than an inconvenience" to his method of religious practice. *Freeman*, 125 F.3d at 737. Plaintiff has proffered no evidence to the contrary. Nor has he provided any factual support, beyond conclusory statements, to demonstrate how Defendant imposed a substantial burden on his ability to practice his religion, as opposed to causing only an incidental effect on his practicing preferences because of the confiscation. Therefore, because Plaintiff has produced no evidence that the confiscation of his 28 religious items made from stone substantially burdened his free exercise of religion, summary judgment is granted for Defendant on Plaintiff's First Amendment claim.

**B. Legitimate Penological Interests**

Assuming arguendo that the removal of Plaintiff's religious items constituted a substantial burden on Plaintiff's religious exercise, Defendant's confiscation of Plaintiff's religious items is nonetheless lawful because CDCR's RPPM is reasonably related to the prison's legitimate penological interests: maintaining safety and security within the prison.  (*See* Doc. No. 78 at 4). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884 (internal quotation and citation omitted).  This is because "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id*. (cleaned up).  The Court considers four factors, as set forth *Turner*, in determining whether a prison policy is reasonably related to legitimate penological interests.

The first and most significant *Turner* factor is whether a "valid, rational connection" exists "between the prison regulation and the legitimate governmental interest." *Id*.; *see also Jones v. Slade*, 23 F.4th 1124, 1135 (9th Cir. 2022) ("The first *Turner* factor is the most important."). Defendant states that the prison seeks to prevent prisoners from accumulating rocks, which prisoners could fashion into a bludgeoning weapon by placing the rocks in a sock or similar item.[3]  (Doc. No. 73-1 at 12). It is undisputed that CDCR's RPPM policy is neutral and rationally related to the prison's legitimate safety concerns for both inmates and officers. *See Jones*, 23 F.4th at 1135 ("There is no question that securing the safe and orderly operation of our prisons and fostering rehabilitation of the inmates are legitimate goals.").  Thus, the first *Turner* weighs in Defendant's favor.

Under the second *Turner* prong, the Court considers whether Plaintiff has "alternative means by which he can practice his religion or is denied all means of religious expression." *Shakur*, 514 F.3d at 886 (internal quotations omitted) (citing *Ward*, 1 F.3d at 877).  It is also undisputed that Plaintiff had various other means of practicing his religion.  For the reasons listed

---

[3] During Plaintiff's deposition, he acknowledged that an accumulation of small rocks could be fashioned into weapon in this way. (Doc No. 73-2 at 10, Ex. A at 50:6-17).

1  *supra*, the Court has identified multiple alternatives means by which Plaintiff could continue
2  practicing his religion.  These alternatives include: (1) purchasing the religious items from an
3  approved vendor; (2) creating religious items using materials other than rock, such as cardboard;
4  (3) using his own arm as a Thor's Hammer for religious ceremonies; and (4) attending Odinist
5  services.  Thus, the second *Turner* also weighs in Defendant's favor.

6  Under the third *Turner* factor, the Court considers the "impact the accommodation will
7  have on guards and other inmates, and on the allocation of prison resources generally." *Shakur*,
8  514 F.3d at 886 (cleaned up).  "When accommodation of an asserted right will have a significant
9  'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the
10 informed discretion of corrections officials." *Turner*, 482 U.S. at 90.  Defendant asserts that
11 Plaintiff's requested accommodation would allow prisoners access to an unrestricted
12 accumulation of rocks, both in size and number.  (Doc. No. 73-1 at 13-14).  Without a policy
13 placing reasonable restrictions on religious items made from rocks, any inmate who claims their
14 religion mandates the collection of stones would be allowed to do so under the guise of free
15 exercise.  Such a scenario would compromise the safety of both prisoners and correctional
16 officers and place an unnecessary burden on prison resources to prevent misuse.  Accordingly, the
17 third *Turner* weighs in Defendant's favor.

18 Finally, under the fourth *Turner* factor, the Court considers whether "there are ready
19 alternatives to the prison's current policy that would accommodate [Plaintiff] at de minimis cost
20 to the prison." *Shakur*, 514 F.3d at 887.  Under this prong, "prison officials do not have to set up
21 and then shoot down every conceivable alternative method of accommodating the claimant's
22 constitutional complaint." *Turner*, 482 U.S. at 91.  As discussed *supra*, there are multiple
23 alternatives to CDCR's policy limiting the collection and accumulation of rocks, including: (1)
24 purchasing religious items from an approved vendor; (2) creating religious items with materials
25 other than rock, such as cardboard; and (3) using one's own arm as a Thor's Hammer.  Thus, the
26 final *Turner* factor weighs in Defendant's favor.

27 Plaintiff's opposition briefing fails to articulate any sufficient factual or legal basis for
28 rejecting these conclusions, nor does Plaintiff's Third Amended Complaint provide any basis for

13

doing so. In his opposition to Defendant's MSJ, Plaintiff only states that the confiscated religious items were not dangerous and that the items fell within the size policy limitations. (Doc. No. 76 at 2). However, this claim conflicts with his deposition testimony. During Plaintiff's deposition, he testified some of the confiscated religious items were two inches across, while other items were "[a]pproximately an inch by inch." (Doc No. 73-2 at 9-10, 21, Ex. A at 49:23-50:5, 71:11-16); *see also* Deposition Transcript 74:23-75:1. To the extent the statement made in Plaintiff's pleadings contradict his deposition testimony, the deposition controls. *See George v. Morris*, 736 F.3d 829, 843-44 (9th Cir. 2013) (explaining "a party cannot create an issue of fact by an affidavit contradicting prior deposition testimony." (cleaned up) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)). Nonetheless, putting aside whether the items exceeded the prohibited size, Plaintiff fails to address the undisputed fact that the number of the religious items in his possession exceeded CDCR's RPPM limits.

For the reasons stated above, the Court finds that CDCR's policy restricting the number and size of religious items made from stone that a prisoner is allowed to possess is reasonably related to the prison's legitimate penological interests in maintaining safety and security. Accordingly, the Court concludes that the confiscation of the 28 stone religious items, in accordance with the CDCR's policy, was not unlawful under these circumstances.

**C. Qualified Immunity**

In the alternative, Defendant asserts that he is entitled to qualified immunity in this case. A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at

589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue." *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)). "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017). The plaintiff bears the burden of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

As discussed *supra*, the Court finds that Plaintiff did not satisfy the first prong of the qualified immunity analysis because Defendant has not committed a violation of Plaintiff's constitutional rights. Thus, the Court need not address the issue of qualified immunity.

Accordingly, it is **ORDERED:**

1. Defendant Longoria's Motion for Summary Judgment (Doc. No. 73) is **GRANTED.**
2. Judgment is granted in favor of Defendant.
3. The Clerk of Court shall close this case.

Dated:   March 19, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

15